**WINDELS MARX LANE & MITTENDORF, LLP**
*Attorneys for Alan Nisselson, Chapter 7 Trustee*
156 West 56th Street
New York, New York 10019
Telephone (212) 237-1021

Attorney Appearing: Alan Nisselson (anisselson@windelsmarx.com)

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>Lisa Vitale,<br><br>                              Debtor. | Chapter 7<br><br>Case No. 1-20-43129-jmm |

**APPLICATION PURSUANT TO BANKRUPTCY CODE §§ 327(e) AND 328(a)
AND BANKRUPTCY RULE 2016(B) FOR AUTHORITY TO RETAIN AND
EMPLOY HARRIS, KEENAN & GOLDFARB PLLC AS MEDICAL MALPRACTICE
COUNSEL TO THE TRUSTEE EFFECTIVE AS OF JANUARY 18, 2024**

**TO THE HONORABLE JIL MAZER-MARINO,**
**UNITED STATES BANKRUPTCY JUDGE:**

Alan Nisselson (the "**Trustee**"), as trustee for the chapter 7 estate (the "**Estate**") of Lisa Vitale (the "**Debtor**"), by his attorneys, Windels Marx Lane & Mittendorf, LLP ("**Windels Marx**"), respectfully submits this application (the "**Application**"), for authority to retain and employ Harris, Keenan & Goldfarb, PLLC (the "**HK&G"**, or, "**Special Medical Malpractice Counsel**") as his Special Medical Malpractice Counsel, effective as January 18, 2024, pursuant to the terms of a contingency fee retainer agreement for a specified special purpose and pursuant to §§ 327(e) and 328 (a) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") and Rule 2016 (b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rule**, or **Rules**").  In support of the Application, the Trustee respectfully states as follows:

A. **Jurisdiction; Venue; Statutory Bases for Relief**

1. The Court has jurisdiction over this Application under 28 U.S.C. §§ 157 and 1334 and the standing orders titled In the Matter of the Referral of Matters to the Bankruptcy Judges, 69 B.R. 186 (E.D.N.Y. 1986) (Weinstein, C.J.) and Order dated December 5, 2012 and effective June 23, 2011 (Amon, C.J.). Venue of this case and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Code § 327(e) and Bankruptcy Rule 2014(a).

B. **Background**

2. On August 27, 2020 (the "**Petition Date**"), the Debtor filed with this Court a voluntary petition for relief under chapter 7 the Bankruptcy Code, by her attorney Jay Meyers.

3. Thereafter, pursuant to Bankruptcy Code § 701(a), the United States Trustee (the "**UST**") appointed the Trustee, as trustee of the Debtor's Estate. The Trustee qualified and is serving as permanent Trustee.

C. **The Debtor's Assets and Liabilities**

4. The Trustee reviewed the Debtor's petition, schedules, statement of financial affairs ("**SOFA**") and related documents (collectively, with the SOFA, the "**Filing Schedules**"). On Schedule A/B, the Debtor listed a 2015 Lexus RX 350 with a value of $20,349.00 (the "**Vehicle**"), household goods, electronics, clothing, jewelry, cash, bank accounts, and a security deposit (collectively, the "**Personal Property**") with a value of $13,100.00.

5. In Schedule A/B, the Debtor did not list any pending lawsuits.

6. In Schedule C, the Debtor claimed an exemption of $8,849.00 for the Vehicle pursuant to 11 U.S.C. §§ 522(d)(2) and (5) exemptions under 11 U.S.C. §§ 522(d) (3)(4) and (5) for the full value of the Personal Property

7. In Schedule D, the Debtor listed a secured debt of $18,372.00 for a lien against the Lexus.

8. In Schedule E/F, the Debtor listed unsecured debts totaling $45,452.00.

9. On October 7, 2020, the Trustee examined the Debtor at the initial Bankruptcy Code § 341(a) meeting of creditors. During her examination, the Debtor also disclosed she was the plaintiff in a pending medical malpractice action (the "**Medical Malpractice Action**").

10. The Trustee questioned the Debtor concerning the Medical Malpractice Action. The Trustee requested that the Debtor file amended Schedules A/B and C to list the Medical Malpractice Action as an asset of the Estate and to claim exemptions for the Medical Malpractice Action in inappropriate amounts. The Trustee adjourned the 341(a) meeting which is now closed.

11. On October 8, 2020, the Debtor filed amended Schedules A/B and C listing the Medical Malpractice Action with an unknown value and claiming an exemption for the Medical Malpractice Action in the amount of $25,150.00 pursuant to 11 U.S.C. § 522(d)(11)(D) (the "**Exemption**"). (Dkt. No. 16).

**D. Proofs of Claim.**

12. Upon request of the Trustee, the Court established February 4, 2021 as the last date within which non-governmental entities can timely file proofs of clam in the Debtor's case. The last date for Governmental entities to timely file proofs of claim was February 23, 2021.

13. So far, four (4) claims totaling $36,403.47 are filed in the Debtor's case.

**E. The Debtor's Medical Malpractice Action**

14. Prior to the Petition Date, the Debtor retained Stephen S. LaRocca, PLLC (the "**LaRocca Firm**") to represent her in connection with the Medical Malpractice Action.

15.     On March 2, 2018, the LaRocca Firm commenced the Medical Malpractice Action by the filing of a complaint (the "**Complaint**") on behalf of the Debtor in the Supreme Court, State of New Yok, County of Kings (the "**Kings County Court**") titled *Lisa Serrao[1] v. Gary Fiasconaro, M.D.* ("**Fiasconaro**") *and New York Methodist Hospital* (the "**Methodist Hospital**") assigned Index No. 521204/2017. A copy of the Complaint is attached as **Exhibit A.**

16.     After filing the Complaint, Stephen LaRocca became of counsel to Burns & Harris, after which Burns & Harris continued to litigate the Medical Malpractice Action.

17.     Subsequently, certain members of Burns & Harris, including Mr. LaRocca, joined HK&G.

18.     The Trustee has conducted discussions with Stephen LaRocca and other members of HK&G who confirmed that, going forward, HK&G will bear sole responsibility for the litigating the Medical Malpractice Action.  The Trustee also confirmed that there are no fee sharing agreements related to the Medical Malpractice Action between LaRocca Firm, Burns & Harris and HK&G and that only HK&G will seek allowance and payment of fees and expenses from the Debtor's Estate in connection with the Medical Malpractice Action.

19.     On January 18, 2024, the Trustee entered into a contingency fee retainer agreement (the "**Contingency Fee Agreement**) with HKG to represent him in connection with the Medical Malpractice Action, subject to approval of this Court. A copy of the Contingency Fee Agreement is attached as **Exhibit B.**

20.     The Trustee has conducted discussions with Stephen LaRocca, Esq., concerning the Medical Malpractice Action. The Trustee has also reviewed the Complaint, the Bill of Particulars and other pleadings filed in the action.

---

[1] Although the Debtor did not include her former name, Lisa Serrao on her Bankruptcy Petition the Trustee has confirmed Lisa Serrao and Lisa Vital are the same person)

{12208740:1}            4

21. According to Mr. LaRocca and to the Complaint, from April 30, 2015 through May 1, 2015, the Debtor was a patient at Methodist Hospital in Brooklyn, New York. The Debtor underwent a termination of her pregnancy performed by Fiasconaro. The procedure failed to completely remove the fetus which resulted in severe infection and sepsis.

22. The Debtor alleged that, as a result of the infection and sepsis, she suffered an aggravation of her existing immune disorders. The Debtor underwent an additional medical procedure at the Hackensack Medical Center to treat her issues.

23. Mr. LaRocca advised the Trustee that the Medical Malpractice Action has merit and may result in a settlement or award in an amount that would provide for a distribution to the Debtor's creditors.

F. **Status of the Medical Malpractice Action**

24. The parties in the Medical Malpractice Action are engaged in discovery. The Medical Malpractice Action is currently stayed pending this Court's approval of this Application.

G. **The Retention of HKG as Special Medical Malpractice Counsel**

25. As set forth in the attached affirmation dated January 18, 2024 of Stephen LaRocca, Esq. (the "**LaRocca Affirmation**"), HKG was founded in 1996  HKG's practice is devoted almost exclusively to personal injury and medical malpractice litigation. Together, the members and associates of HKG have decades of experience litigating personal injury and medical malpractice actions.

26. Pursuant to the Contingency Fee Agreement, under which the HKG will provide legal services to the Trustee, HKG Firm is entitled to receive a contingency fee based on a sliding scale as follows: (i) thirty percent (30%) on the first $250,000 of the sum recovered; (ii)

twenty five percent (25%) on the next $250,000 of the sum recovered; (iii) twenty percent (20%) on the next $500,000 of the sum recovered; (iv) fifteen percent (15%) on the next $250,000 of the sum recovered; and (v) ten percent (10%) on any amount over $1,250,000 of the sum recovered from any moneys resulting from the prosecution of the Medical Malpractice Action, which sum will be computed on the net sums recovered. In addition to the contingency fee, HKG will be entitled to reimbursement of taxable cost and disbursements incurred in the prosecution of the Medical Malpractice Action.

27. HKG has advised the Trustee that, to date, it has incurred taxable costs and disbursements in the approximate amount of $1,900.00 in connection with the Medical Malpractice Action.

28. The Trustee submits that the retention of HKG as his Special Medical Malpractice Counsel provides the Debtor's Estate with the greatest chance of recovery in the Medical Malpractice Action and would be in the best interest of the Debtor's Estate, its creditors and other parties in interest.

29. To the best of the Trustee's knowledge, HKG does not have any connection with the Trustee, the Debtor's creditors or any other parties in interest or their respective attorneys or accountants, the UST or any person employed in the Office of the UST.

30. To the best of the Trustee's knowledge, no agreement exists between HKG and any third person for the sharing of compensation received by HKG in connection with this case, except as allowed under Bankruptcy Code § 504(b) and Bankruptcy Rule 2016.

31. It is respectfully submitted that HKG be retained as Trustee's Special Medical Malpractice Counsel effective as January 18, 2024, since, as set forth in the LaRocca Affirmation, now a member of HKG, attorneys now with HKG have properly served as the

Debtor's counsel in the Medical Malpractice Action since before the Petition Date and have been diligently prosecuting the Medical Malpractice Action.

32. The terms of the Contingency Fee Retainer Agreement should be approved given the nature of the work of HKG and because such fee agreements are customary in the field of medical malpractice litigation. Any payment of compensation would, in any event, be subject to appropriate application to this Court pursuant to Bankruptcy Code §§ 330 and 331.

**Appeals**

33. As provided for in the Contingency Fee Agreement, the Trustee's retention requires that if any appeal is taken the Trustee shall at that time decide whether HKG should represent the Estate in any appeal.

34. If the Trustee so decides, he shall submit a revised application for such retention with the Court if an appeal is prosecuted, and if HKG intends to seek compensation over and above the one-third contingency fee. Any payment of fees and reimbursement of expenses incurred in connection with any appeal will be upon notice and an appropriate application to this Court pursuant to Bankruptcy Code §§ 330 and 331 upon notice and a hearing.

**Outside Counsel**

35. As provided for in the Contingency Fee Agreement, HKG shall <u>not</u> hire outside counsel or co-counsel without the Trustee's approval and any outside counsel or co-counsel may only be employed subject to prior Court approval and upon appropriate application under Bankruptcy Code § 327, and any co-counsel's or outside counsel's compensation shall be subject to the provisions of Bankruptcy Code §§ 330, 331 and 504, Bankruptcy Rule 2016, and the New York Rules of Professional Conduct.

**Resolution of Disputes**

36. As provided for in the Contingency Fee Agreement, the Bankruptcy Court shall have sole jurisdiction with respect to any dispute that may arise between the Trustee or the Debtor and HKG.

**Turnover of Settlement Funds**

37. Any monies generated from the Medical Malpractice Action are property of the Debtor's Estate and must paid directly to the Trustee. Payment of fees and expenses to HKG are subject to approval of the Bankruptcy Court upon notice and an appropriate application to this Court pursuant to Bankruptcy Code §§ 330 and 331. Further, the Estate will not be liable for payment of any expenses if no settlement or award is obtained.

**Payments for Additional Services**

38. Any payment of fees to HKG are subject to approval of the Bankruptcy Court upon notice and an appropriate application to this Court pursuant to Bankruptcy Code §§ 330 and 331.

**Trustee and Bankruptcy Court Approval of Settlement**

39. Any settlement of the Medical Malpractice Action shall be subject to the Trustee's written consent and subject to approval of this Court upon proper application.

**Liens**

40. Any payment of Workers' Compensation liens, medical liens or other liens must be approved by the Bankruptcy Court. In the event no settlement or award is obtained in the Medical Malpractice Action, the Estate will not be responsible for payment of any liens.

**Withdrawal as Counsel**

41.     Should HKG desire to withdraw as Special Medical Malpractice Counsel, it must do so by motion to the Bankruptcy Court.

**Status Reports on Medical Malpractice Action**

42.     Each October 31, January 31 and April 30 following the date of this Order, HKG shall report by letter to the Trustee, and to the Trustee's satisfaction, regarding the status of the Medical Malpractice Action.

43.     No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully prays for an order of this Court, substantially in the form attached as **Exhibit C**, authorizing the Trustee to retain HKG to act as his Special Medical Malpractice Counsel as of January 18. 2024 to prosecute the Medical Malpractice Action and such other and further relief as is appropriate.

Dated:  New York, New York         Respectfully submitted,
        January 29, 2024

                                       WINDELS MARX LANE & MITTENDORF, LLP
                                       *Attorneys for Alan Nisselson, Chapter 7 Trustee*

                                    By: /s/ Alan Nisselson
                                       Alan Nisselson (anisselson@windelsmarx.com)
                                       A Member of the Firm
                                       156 West 56th Street
                                       New York, New York 10019
                                       Tel.: (212) 237-1000

Stephen LaRocca (SLaRocca@hkglaw.com)
HARRIS, KEENAN & GOLDFARB PLLC
233 Broadway, Suite 900
New York, NY 10279
Tel: (212) 393-1000

*Proposed Special Medical Malpractice Attorneys for the Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>Lisa Vitale,<br><br>        Debtor. | Chapter 7<br><br>Case No. 1-20-43129-jmm |

**AFFIRMATION OF STEPHEN LAROCCA, ESQ. IN SUPPORT OF APPLICATION PURSUANT TO BANKRUPTCY CODE §§ 327(e) AND 328(a) AND BANKRUPTCY RULE 2016(B) FOR AUTHORITY TO RETAIN AND EMPLOY HARRIS, KEENAN & GOLDFARB PLLC AS MEDICAL MALPRACTICE COUNSEL TO THE TRUSTEE EFFECTIVE AS OF JANUARY 18, 2024**

**STATE OF NEW YORK  )**
          **) S.S.:**
**COUNTY OF NEW YORK )**

    **STEPHEN LAROCCA, ESQ.** affirms under penalty of perjury, that the forgoing is true and correct:

    1.  That I am an attorney at law, duly licensed to practice in the Courts of the State of New York.

    2.  That I am a member of Harris, Keenan & Goldfarb ("**HK&G**", or, "**Special Medical Malpractice Counsel**"), which maintains an office for the practice of law at 233 Broadway, Suite 900, New York, NY 10279.

{12208740:1}

3. HKG was founded in 1996  HKG's practice is devoted almost exclusively to personal injury and medical malpractice litigation.  Together, the members and associates of HKG have decades of experience litigating personal injury and medical malpractice actions.

4. I make this affirmation in support of the application (the "**Application**") of Alan Nisselson as trustee for the chapter 7 estate (the "**Estate**") of Lisa Vitale (the "**Debtor**"), by attorneys, Windels Marx Lane & Mittendorf, LLP ("**Windels Marx**"), for authority to retain and employ HKG as his Special Medical Malpractice Counsel, effective as January 18, 2024, pursuant to the terms of a contingency fee retainer agreement for a specified special purpose and pursuant to §§ 327(e) and 328 (a) of title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") and Rule 2016 (b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rule**, or **Rules**").

5. I understand that on August 27, 2020  (the "**Petition Date**") the Debtor filed a voluntary petition for relief under chapter 7 of the **Bankruptcy Code**

6. Prior to the Petition Date, the Debtor retained my former firm, Stephen S. LaRocca, PLLC (the "**LaRocca Firm**") to represent her in connection with the Medical Malpractice Action.

7. On March 2, 2018, the LaRocca Firm commenced the Medical Malpractice Action by the filing of a complaint (the "**Complaint**") on behalf of the Debtor in the Supreme Court, State of New Yok, County of Kings (the "**Kings County Court**") titled *Lisa Serrao[2] v. Gary Fiasconaro, M.D.* ("**Fiasconaro**") *and New York Methodist Hospital* (the "**Methodist Hospital**") assigned Index No. 521204/2017. A copy of the Complaint is attached to the Application as **Exhibit A.**

---

[2] Although the Debtor did not include Lisa Serrao s her former name on her Bankruptcy Petition the Trustee has confirmed Lisa Serrao and Lisa Vital are the same person.

{12208740:1}     2

8. Prior to the Petition Date, the Debtor retained Stephen S. LaRocca, PLLC (the "**LaRocca Firm**") to represent her in connection with the Medical Malpractice Action.

9. On March 2, 2018, the LaRocca Firm commenced the Medical Malpractice Action by the filing of a complaint (the "**Complaint**") on behalf of the Debtor in the Supreme Court, State of New Yok, County of Kings (the "**Kings County Court**") titled *Lisa Serrao[3] v. Gary Fiasconaro, M.D.* ("**Fiasconaro**") *and New York Methodist Hospital* (the "**Methodist Hospital**") assigned Index No. 521204/2017. A copy of the Complaint is attached as **Exhibit A.**

10. After filing the Complaint, I became of counsel to Burns & Harris, after which Burns & Harris continued to litigate the Medical Malpractice Action.

11. Subsequently, certain members of Burns & Harris, including me, joined HK&G.

12. Going forward, HK&G will bear sole responsibility for the litigating the Medical Malpractice Action.  The Trustee also confirmed that there are no fee sharing agreements related to the Medical Malpractice Action between LaRocca Firm, Burns & Harris and HK&G and that only HK&G will seek allowance and payment of fees and expenses from the Debtor's Estate in connection with the Medical Malpractice Action.

13. On January 18, 2024, the Trustee entered into a contingency fee retainer agreement (the "**Contingency Fee Agreement**) with HKG to represent him in connection with the Medical Malpractice Action, subject to approval of this Court. A copy of the Contingency Fee Agreement is attached as **Exhibit B.**

**The Medical Malpractice Action**

14. As set forth in the Complaint, from April 30, 2015 through May 1, 2015, the Debtor was a patient at Methodist Hospital in Brooklyn, New York.  The Debtor underwent a

---

[3] Although the Debtor did not include her former name, Lisa Serrao on her Bankruptcy Petition, Lisa Serrao and Lisa Vital are the same person)

{12208740:1} 3

termination of her pregnancy performed by Fiasconaro. The procedure failed to completely remove the fetus which resulted in severe infection and sepsis.

15. The Debtor alleges that, as a result of the infection and sepsis, she suffered an aggravation of her existing immune disorders. The Debtor underwent an additional medical procedure at the Hackensack Medical Center to treat her issues.

16. I advised the Trustee that the Medical Malpractice Action has merit and may result in a settlement or award in an amount that would provide for a distribution to the Debtor's creditors.

**Status of the Medical Malpractice Action**

17. The parties in the Medical Malpractice Action are engaged in discovery. The Medical Malpractice Action is currently stayed pending this Court's approval of this Application.

18. Pursuant to the Contingency Fee Agreement, under which the HKG will provide legal services to the Trustee, HKG Firm is entitled to receive a contingency fee based on a sliding scale as follows: (i) thirty percent (30%) on the first $250,000 of the sum recovered; (ii) twenty five percent (25%) on the next $250,000 of the sum recovered; (iii) twenty percent (20%) on the next $500,000 of the sum recovered; (iv) fifteen percent (15%) on the next $250,000 of the sum recovered; and (v) ten percent (10%) on any amount over $1,250,000 of the sum recovered from any moneys resulting from the prosecution of the Medical Malpractice Action, which sum will be computed on the net sums recovered. In addition to the contingency fee, HKG will be entitled to reimbursement of taxable cost and disbursements incurred in the prosecution of the Medical Malpractice Action.

19. I advised the Trustee that, to date, it has incurred taxable costs and disbursements in the approximate amount of $1,900.00 in connection with the Medical Malpractice Action.

20. Pursuant to Rule 1.5 (c) of the New York Rules of Professional Conduct, I hereby disclose that the Disbursements may include, *inter alia,* charges or fees for: photocopies, postage, telephone and facsimile charges, tolls, parking, travel costs, Court filing fees, deposition and transcript fees, medical examinations, medical reports, service of pleadings, expert witness testimony and lien searches.

21. HKG does not, insofar as I have been able to ascertain, represent any interest adverse to the Trustee or the Debtor's Estate in the matters upon which it seeks to be retained.

22. HKG will not, while retained by the Trustee, represent any other entity having an adverse interest in to the Trustee, the Debtor or the Debtor's Estate.

23. No agreement exists between HKG and any third person for the sharing of compensation received by HKG in connection with this case, except as allowed under Bankruptcy Code § 504(b) and Bankruptcy Rule 2016

24. As stated in the Application, HKG has an ongoing relationship with the Debtor. I have been representing the Debtor in the Medical Malpractice Action since before the Petition Date. HKG familiar with the case files and has special expertise in the area necessary to the continuation and preservation of the Medical Malpractice Action as an asset of the Estate

25. The terms of the Contingency Fee Retainer Agreement should be approved given the nature of the work of HKG and because such fee agreements are customary in the field of medical malpractice litigation. Any payment of compensation would, in any event, be subject to appropriate application to this Court pursuant to Bankruptcy Code §§ 330 and 331.

**Appeals**

26. As provided for in the Contingency Fee Agreement, the Trustee's retention requires that if any appeal is taken the Trustee shall at that time decide whether HKG should represent the Estate in any appeal. If the Trustee so decides, he shall submit a revised application for such retention with the Court if an appeal is prosecuted, and if HKG intends to seek compensation over and above the one-third contingency fee. Any payment of fees and reimbursement of expenses incurred in connection with any appeal will be upon notice and an appropriate application to this Court pursuant to Bankruptcy Code §§ 330 and 331 upon notice and a hearing.

**Outside Counsel**

27. As provided for in the Contingency Fee Agreement, HKG shall not hire outside counsel or co-counsel without the Trustee's approval and any outside counsel or co-counsel may only be employed subject to prior Court approval and upon appropriate application under Bankruptcy Code § 327, and any co-counsel's or outside counsel's compensation shall be subject to the provisions of Bankruptcy Code §§ 330, 331 and 504, Bankruptcy Rule 2016, and the New York Rules of Professional Conduct.

**Resolution of Disputes**

28. As provided for in the Contingency Fee Agreement, the Bankruptcy Court shall have sole jurisdiction with respect to any dispute that may arise between the Trustee or the Debtor and the HK&G.

**Turnover of Settlement Funds**

29. As provided for in the Contingency Fee Agreement, any monies generated from the Medical Malpractice Action are property of the Debtor's Estate and must paid directly to the

Trustee. Payment of fees and expenses to HKG are subject to approval of the Bankruptcy Court upon notice and an appropriate application to this Court pursuant to Bankruptcy Code §§ 330 and 331. Further, the Estate will not be liable for payment of any expenses if no settlement or award is obtained.

**Payments for Additional Services**

30. As provided for in the Contingency Fee Agreement, any payment of fees to HK&G are subject to approval of the Bankruptcy Court upon notice and an appropriate application to this Court pursuant to Bankruptcy Code §§ 330 and 331.

**Trustee and Bankruptcy Court Approval of Settlement**

31. Any settlement of the Medical Malpractice Action shall be subject to the Trustee's written consent and subject to approval of this Court upon proper application.

**Liens**

32. Any payment of Workers' Compensation liens, medical liens or other liens must be approved by the Bankruptcy Court. In the event no settlement or award is obtained in the Medical Malpractice Action, the Estate will not be responsible for payment of any liens.

**Withdrawal as Counsel**

33. Should HKG desire to withdraw as Special Medical Malpractice Counsel, it must do so by motion to the Bankruptcy Court.

**Status Reports on Medical Malpractice Action**

34. Each October 31, January 31 and April 30 following the date of this Order, HKG shall report by letter to the Trustee, and to the Trustee's satisfaction, regarding the status of the Medical Malpractice Action.

**WHEREFORE**, Affiant respectfully requests that the Application be granted in its entirety, along with such other and further relief as this Court may deem just.

Dated: January 18, 2024

                                                /s/ Stephen LaRocca
                                                **STEPHEN LAROCCA, ESQ.**